UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
| ELIZABETH ANN CARRILLO ) | Case No. 08-12655-SSM |
| FERNANDO ALEX CARRILLO ) | Chapter 7 |
| ) | |
| Debtors ) | |
| ) | |
| ROBERT O. TYLER, TRUSTEE ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Adversary Proceeding No. 09-1018 |
| ) | |
| OWNIT MORTGAGE LOAN TRUST, ) | |
| SERIES 2006-3, *et al.* ) | |
| ) | |
| Defendants ) | |

**MEMORANDUM OPINION**

This is an action by a bankruptcy trustee to avoid what he contends is a defectively-acknowledged deed of trust against a condominium unit that was foreclosed upon several months prior to the debtors' chapter 7 bankruptcy filing. A trial was held without a jury on October 22, 2009. The issues for determination are (1) whether a certificate of acknowledgment signed by a person who was in fact a notary public but that failed to state his office—indeed, irrelevantly identified him as a "managing member"—was so defective as to defeat the constructive notice that would otherwise result from recording the deed of trust in the land records; (2) if so, whether a Virginia curative statute applies; (3) and if not, whether a subsequently recorded deed of foreclosure was sufficient to provide constructive notice of the deed of trust; and (4) whether,

independent of whatever constructive notice it might provide, the foreclosure of the property prior to the bankruptcy filing is a bar to avoidance. For the reasons stated, the court concludes that, although the acknowledgment of the deed of trust was defective, the curative statute applies, but that even if it does not, the foreclosure deed constituted constructive notice of the deed of trust sufficient to defeat exercise of the trustee's strong-arm powers as a hypothetical bona fide purchaser or lien creditor. This opinion constitutes the court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52(a).

## Background and Findings of Fact

Elizabeth Ann Carrillo and Fernando Alex Carrillo ("the debtors") filed a petition in this court on May 12, 2008, for relief under chapter 7 of the Bankruptcy Code. Robert O. Tyler was appointed as trustee. On their statement of financial affairs, the debtors reported the foreclosure of four pieces of real estate, including a condominium unit located at "5858 Orchase [*sic*] Hill Court." The evidence shows that the debtors took title to real property at 5858 Orchard Hill Court, Clifton, Virginia—described as Condominium Unit Number 5858 Orchard Hill Court, THE PONDS AT CENTREVILLE CONDOMINIUM—by deed dated January 27, 2006, and recorded on January 30, 2006, in the Clerk's Office of the Circuit Court of Fairfax County, Virginia, in Deed Book 18170, Page 1370. By deed of trust dated the same day as the deed, the debtors conveyed the property in trust to "Stoneridge" to secure a loan made by Ownit Mortgage

Solutions, Inc., in the amount of $247,000.[1]  On the page following the debtors' signatures is a certificate stating:

> State of Virginia
> County of Fairfax
> The foregoing instrument was acknowledged before me this January 27, 2006 by FERNANDO CARILLO, ELIZABETH CARRILLO
> He/She/They is/are personally known to me or has/have produced [blank] as identification.

There follows a signature line with an illegible signature, a line for "Title or Rank" which is filled out "Managing Member," and the statement "My commission expires the 03/31/06 day of [blank]".

The evidence at trial established that the signature on the certificate was that of John H. Hawthorn, who was, on the date the deed of trust was signed, both a notary public—whose commission ran through March 31, 2006—for the Commonwealth of Virginia, and also the managing member of Stoneridge Title LLC, the settlement agent.  The evidence also established that the words "Managing Member" and the expiration date of Mr. Hawthorn's notary commission were not in his handwriting and were apparently inserted by a document processor in his office after he signed the certificate but before the deed of trust was delivered to a title insurance company for recording.  Although the certificate provides a place for a seal, no seal had been affixed or impressed at the time the deed of trust was presented for recording   (The testimony established, and the parties agree, that Virginia law in effect at that time did not require a notary to have or use a seal.)

---

[1]  The formal beneficiary of the deed of trust is Mortgage Electronic Registration Systems, Inc., as nominee for the lender.

The deed of trust was recorded in the Clerk's Office of the Circuit Court of Fairfax County, Virginia, on January 30, 2006, in Deed Book 18170, Page 1373, immediately following the deed to the debtors.  The clerk of the Circuit Court, called as a witness, testified that his employees routinely check that instruments presented for recording are properly acknowledged, and he speculated that the deed of trust was accepted because the inclusion of a commission expiration date implied that the person taking the acknowledgment was a notary public.

The note eventually went into default, and Specialized Inc., of Virginia ("Specialized") was appointed as substitute trustee under the deed of trust.  The deed of appointment was recorded on February 1, 2008; but how it was indexed is not shown by the record.  A foreclosure sale was held on February 18, 2008, at which the property was sold to LaSalle Bank National Association, as Trustee for Ownit Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-3 ("LaSalle") for $200,900.  A deed from Specialized to LaSalle was executed the same date and was recorded on April 1, 2008.  The foreclosure deed was indexed in the names of the debtors and Specialized as grantors and LaSalle as grantee and refers to the execution and recording of the deed of trust, which was identified by date, grantors and grantee, and deed book and page. The debtors filed their chapter 7 petition 41 days after the foreclosure deed was recorded.   The following day, the Ponds at Centreville Unit Owners Association recorded among the land records a memorandum of lien for unpaid condominium fees.

The present action was commenced by the chapter 7 trustee on January 21, 2009.  The complaint, as amended, is pleaded in three counts.  Count I seeks avoidance, under the trustee's "strong-arm" powers as a hypothetical bona fide purchaser of real property or hypothetical lien creditor, of the Ownit deed of trust and the subsequent foreclosure deed.  Count II seeks

4

avoidance and recovery, as a preferential transfer, of the $200,900 foreclosure proceeds applied to the note. And Count III seeks avoidance, as a preference, of the conveyance effected by the foreclosure deed and recovery by the trustee of $200,900 as the value of the property. The defendant parties are U.S. Bank, National Association, as Successor Trustee for the Ownit Mortgage Loan Trust, Ownit Mortgage Loan Asset-Backed Certificates, Series 2006-3 ("U.S. Bank"); Mortgage Electronic Registration Systems, Inc., as Nominee for U.S. Bank, National Association, Successor Trustee for the Ownit Mortgage Loan Trust, Ownit Mortgage Loan Asset-Backed Certificates, Series 2006-3 ("MERS"); Specialized, Inc. of Virginia ("Specialized"); and The Ponds at Centreville Condominium Unit Owners Association ("Ponds"). Prior to the final pretrial conference, the trustee voluntarily dismissed Counts II and III with prejudice, and the action proceeded to trial solely on Count I.

Conclusions of Law and Discussion

I.

This court has subject matter jurisdiction under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. An action to determine the validity of a lien is a core proceeding in which a final judgment or order may be entered by a bankruptcy judge, subject to the right of appeal. 28 U.S.C. § 157(b)(2)(K),(O). Venue is proper in this district under 28 U.S.C. § 1401(a). The defendants have been properly served and have appeared generally.

II.

Among the powers enjoyed by a bankruptcy trustee to maximize property available for distribution to creditors are the so-called "strong-arm" powers in § 544(a), Bankruptcy Code.

Relevant to the present action are the trustee's rights and powers as a hypothetical purchaser of real estate and hypothetical judgment lien creditor:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, wether or not such a creditor exists;
>
> * * *
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

§ 544(a)(1), (3), Bankruptcy Code. Simply stated, the bankruptcy trustee is in the same position, with respect to real estate, as if he were a bona fide purchaser who bought the property from the debtor on the filing date and simultaneously perfected the transfer by recording a deed, or if he had extended credit to the debtor on the filing date and on the same date had obtained a judgment lien against the property. Thus, if under Virginia law a creditor who had docketed a judgment lien against the debtors on May 12, 2008, or a bona fide purchaser who had bought the Orchard Hill Court property from the debtors on May 12, 2008, and recorded a deed the same day, would have taken free and clear of the Ownit deed of trust and the subsequent foreclosure sale, so does the bankruptcy trustee. *Mayer v. United States (In re Reasonover)*, 236 B.R. 219 (Bankr. E.D. Va. 1999), *vacated and remanded*, 238 F.3d 414 (4th Cir. 2000) (unpublished table decision), *opinion on remand*, 2001 WL 1168181, 2001 Bankr. LEXIS 2109 (Bankr. E.D. Va., Apr. 16, 2001).

A.

Under the Virginia recording statutes, an unrecorded conveyance or deed of trust is "void as to all purchasers for valuable consideration without notice not parties thereto and lien creditors, *until and except from the time it is duly admitted to record. . . .*" Va. Code Ann. § 55-96(A)(1) (emphasis added). A clerk of court is required to admit to record "any such writing as to any person whose name is signed thereto with an original signature . . . *when it shall have been acknowledged* by him . . . or his duly qualified deputy, in his office, *or in the manner prescribed* in Articles 2 (§ 55-113 et seq), 2.1 (§ 55-118.1 et seq.) and 3 (§ 55-119) of this chapter." Va. Code Ann. § 55-106 (emphasis added). Among the prescribed methods of acknowledgment are "the certificate of such clerk or his deputy, *a notary public*, a commissioner in chancery, or a clerk of any court of record within the United States . . . that such writing had been acknowledged before him by such person." Va. Code Ann. § 55-113(1) (emphasis added). Such a certificate must be "written upon or annexed to" to the writing and must be "substantially" to the following effect:

> I, .........., clerk (or deputy clerk, or a commissioner in chancery) of the .......... court, (or a notary public) for the county (or corporation) aforesaid, in the State (or territory, or district) of .......... do certify that E.F., or E.F and G.H., and so forth, whose name (or names) is (or are) signed to the writing above (or hereto annexed) bearing date on the .......... day of .........., has (or have) acknowledged the same before me in my county (or corporation) aforesaid.
> Given under my hand this .......... day of ..........

*Id*. As an alternative, a statutory short form of acknowledgment that is "sufficient . . . under any law of this Commonwealth" may take the following form:

> State of ..........
> County of ..........
> The foregoing instrument was acknowledged before me this (date) by (name of person acknowledged).

> (Signature of Person Taking Acknowledgment)
> (Title or Rank)
> (Serial Number, if any)

Va. Code Ann. § 55-118.6.

In this case, the certificate of acknowledgment on the deed of trust conforms to the statutory short form except that the "Title or Rank" is erroneously given as "Managing Member," which is not among the officers authorized by statute to take acknowledgments. The issue therefore is whether the misstatement of Mr. Hawthorn's actual authority as a notary public to take the debtors' acknowledgment renders the certificate so defective that the deed of trust was not eligible to be recorded.

No reported decision in Virginia has squarely ruled on this issue, but several reported cases are instructive. The most recent opinion of the Supreme Court of Virginia addressing the requirements for a certificate of acknowledgment is *Cumbee v. Myers*, 232 Va. 371, 350 S.E.2d 633 (1986). In that case a petition for a writ of mandamus had been filed to compel a circuit court clerk to record a deed which had been signed by five grantors and contained the certificates of three different notaries that the deed was "subscribed and sworn to" by the grantors. *Id.* at 372, 350 S.E.2d at 633. The Court began by observing:

> The policy of the Commonwealth is "to look with great leniency on certificates of acknowledgment, and to uphold them if possible." *Blair v. Rorer's Adm'r*, 135 Va. 1, 24, 116 S.E. 757, 775 (1923), *error denied*, 262 U.S. 734 (1923). Obvious technical errors in a certificate of acknowledgment will be disregarded; a substantial compliance with the acknowledgment statute is all that is required. *Id.* "If it is reasonably certain that the grantor made the acknowledgment of the instrument in question that is sufficient," *id.*, because "[t]he object of the statute is that the notary . . . shall know and certify that the person whose name is signed to the instrument is the person who is acknowledging it." *Building and Loan Ass'n v. Roane*, 205 Va. 916, 917, 140 S.E.2d 823, 824 (1965).

*Cumbee*, 232 Va. at 373, 350 S.E.2d at 634.  The Court then reasoned that although there "is a marked difference" between acknowledging a signature and signing a document under oath, swearing "subsumes an acknowledgment" and therefore makes it "reasonably certain" that the grantors acknowledged the deed. *Id*. at 374, 350 S.E.2d at 634-35.  On that basis, the Court granted the writ of mandamus. *Id.*, 350 S.E.2d at 635.

The *Blair* opinion cited in *Cumbee* involved a judgment holder's attack on a deed by the judgment debtor, one Ferdinand Rorer, that had been recorded, as the Court pointedly observed, "more than 44 years before the acknowledgment was assailed . . . [and] more than six years before any of [the] judgments were recovered." *Blair*, 135 Va. at 23, 116 S.E. at 775.  "Under such circumstances," the Court explained, "courts will be astute to find some means of giving effect to the *bona fide* acts of the parties, founded upon valuable consideration, if it can be done without prejudice to the rights of other persons who have superior claims." *Id.* at 23-24, 116 S.E. at 775.  The certificate of acknowledgment in that case was as follows:

> Roanoke county, to-wit:
>     This is to certify that F. Rorer, of the county of Roanoke and State of Virginia, personally appeared before me, a notary public for aforesaid county, and acknowledged said writing to be his act and deed.
>         Given under my hand this 21st day of September 1876.
>             J. W. Gish, N. P.

*Id.* at 22, 116 S.E. at 775.  The claimed defect was that the certificate did not expressly follow the statutory form of acknowledgment by stating that "the F. Rorer who acknowledged was the F. Rorer that signed the deed" and that "the writing acknowledged was the writing signed." *Id.* at 23, 116 S.E. at 775. The Court, however, concluded that the certificate of acknowledgment, although it did not completely follow the statutory form, was sufficient to create a presumption that the person signing and acknowledging the deed were the same and that the "said writing"

9

referred to in the certificate was the deed. *Id*. at 25-27, 116 S.E. at 776.  On that basis, the Court held that the certificate of acknowledgment was sufficient and that the property conveyed by the deed was not subject to the judgments that were later rendered against Rorer. *Id.* at 27, 116 S.E. at 776.

The *Building and Loan Association* opinion, like *Cumbee*, involved a petition for a writ of mandamus to compel a clerk of court to record an instrument, in that case a power of attorney from one James W. Welch to his wife.  The opinion recites that immediately under the signature on the instrument "was a certificate of acknowledgment taken by Margaret A. Theis, a notary public," which stated:

> *  *  the grantor in the foregoing Power of Attorney, who is personally well known to me, appeared before me this day within the territorial limits of my authority and executed said instrument after the contents thereof had been read and duly explained to him, and acknowledged that the execution of said instrument by him was his free and voluntary act and deed * *.

205 Va. at 917, 140 S.E.2d at 824 (ellipsis in original).  Although the clerk, in refusing to admit the power of attorney to record, had taken the position that the certificate was deficient because "the date of the instrument and the name of the person executing the instrument were omitted entirely," *id.* at 916-917, 140 S.E.2d at 824,  the Court concluded that the certificate was "substantially to the effect required by [Section 55-113] and that the power of attorney should be admitted to record." *Id.* at 918, 140 S.E.2d at 824.

To be sure, neither *Cumbee* nor the *Blair* and *Building and Loan Association* cases upon which it relies involved certificates which—whatever their other departures from the statutory form—completely failed to state the official character of the officer signing the acknowledgment.  To find a discussion of that issue requires going back more than a century to

the opinion in *Hurst & Co. v. Leckie*, 97 Va. 550, 34 S.E. 464 (1899). That case involved several challenges to the validity of a deed of assignment for the benefit of creditors. Among the challenges were that the deed had not been "duly" recorded because the certificate of acknowledgment, while reciting that it was made before "T. F. Amole, a commissioner in chancery for the city aforesaid [Buena Vista, Virginia]," did not recite that he was a commissioner in chancery of a "court of record" as required by the predecessor of Section 55-113. *Id.* at 561, 34 S.E. at 468. The Court began its analysis by stating,

> The statute . . . requires that a deed shall be admitted to record upon a certificate of acknowledgment before certain officers . . . and prescribes the form of the certificate. The acknowledgment must be according to the prescribed form, and the certificate thereof, in that form or to that effect, be written upon or annexed to the deed to authorize its admission to record. It must contain all the requisites of such form, and *no omission can be supplied by parol evidence*.

*Id.* (emphasis added). The Court distinguished several early cases that had held "that it was not essential that the official character of the persons taking the acknowledgment should appear in the certificate, but that it would be presumed that the acknowledgment was made before officers authorized to take it," by noting that those cases "arose before the enactment of the statute prescribing the form of the certificate of acknowledgment, which had the effect to change the law in this respect." *Id.* at 562, 34 S.E. at 468. Even so, the court upheld the certificate before it, reasoning that in Virginia only circuit courts and corporation courts had commissioners in chancery; that both circuit courts and corporation courts were courts of record; and that the identification of Amole in the certificate as "commissioner in chancery for [the City of Buena Vista]"—which at that time had only a corporation court, not a circuit court—"necessarily" showed that he was a commissioner in chancery for the Corporation Court of the City of Buena

11

Vista. *Id*. at 562-63, 34 S.E. at 468.  The Court concluded, therefore, that the certificate certified "in substance" everything required by the statute and stated:

> A strict or literal compliance is not required. . . . [T]o require that certificates of acknowledgments shall conform literally to the prescribed form would jeopardize titles to lands, and might sacrifice valuable rights depending upon them.  A substantial compliance with all the material requirements of the statute as to . . . the form of the certificate is all that is necessary.  If words equivalent to those in the statute are used, it is sufficient.

*Id.* at 563, 34 S.E. at 468.

The problem here, of course, is that "managing member" is not equivalent to "notary public," and while the reported Virginia decisions subsequent to *Hurst* have espoused a lenient approach that has sought to uphold certificates of acknowledgment wherever possible, the language in *Hurst* that the official character of the person taking the acknowledgment cannot be supplied by parole evidence remains, so far as this court can determine, controlling authority in the Commonwealth of Virginia.  It is true that in *Hurst* the Court showed great willingness to make out the missing elements of Amole's status from what was already present, but it is one thing to leap from "commissioner in chancery for the [City of Buena Vista]" to "commissioner in chancery of the corporation court for the City of Buena Vista," and quite another to leap from "managing member" to "notary public."  Had a notary seal been present, a very different issue would be presented.  But it was not.  And the court is unable to conclude that merely supplying an expiration date for the certificate signer's "commission" would be sufficient, even under the approach taken in *Hurst*, to make out Hawthorn's official character as a notary public.  One can be "commissioned" a great many things, and it is far from clear that the existence of a commission—even a commission with an expiration date—reasonably implies that one is a

notary public. Accordingly, the court concludes that the deed of trust in this case was not properly acknowledged and should not have been admitted to record.

B.

The determination that the deed of trust was defectively acknowledged does not end the inquiry when, despite the defect, it was nevertheless admitted to record by the clerk of court. In particular, two curative statutes may serve to validate the recording of an improperly acknowledged instrument. The first, enacted in 1973, and codified as § 55-106.2 of the Code of Virginia, provided as follows at the time the deed of trust was recorded:

> All writings admitted to record shall be conclusively presumed to be in proper form for recording after having been recorded for a period of three years, except in cases of fraud.

Va. Code Ann. § 55-106.2.[2] The second statute, § 17.1-223 of the Code of Virginia, after first addressing the duty of the clerk of court, upon payment of required fees and taxes, to record "writing[s] authorized by law to be recorded, with all certificates, plats, schedules or other papers thereto annexed or thereon endorsed," then provides: "If the writing or deed is accepted for record and spread on the deed books, it shall be deemed to be validly recorded for all

---

[2] The statute was amended in 2008 and now reads as follows:

> A writing that is not properly notarized in accordance with the laws of the Commonwealth shall not invalidate the underlying document, however, any such writing shall not be in proper form for recordation. All writings admitted to record shall be presumed to be in proper form for recording after having been recorded, and conclusively presumed to be in proper form for recording after having been recorded for a period of three years, except in cases of fraud.

However, the act expressly stated that the amendments would not apply to documents notarized prior to July 1, 2008. 2008 Va. Acts c. 814 p.4.

13

purposes." Va. Code Ann. 17.1-223.  It is admittedly not easy to reconcile the two provisions, and in particular to divine the distinction, if any, that the General Assembly saw between a conclusive presumption in § 55-106.2 and a "deemed" valid recording in § 17.1-223, with the former arising only after three years and the latter immediately upon recording.  If the three year period applies, then the defendants are not protected even though the trustee did not bring this action until more than three years after the recording of the deed of trust, since the focus of the trustee's strong-arm powers under § 544(a) as a hypothetical purchaser or lien creditor is on the situation as it existed on the filing date of the bankruptcy petition, not when the avoidance action was brought.  On the other hand, if the curative language in § 17.1-223 applies, then the defectively acknowledged deed of trust—since it was "accepted for record and spread upon the deed books"—must be deemed to have been validly recorded.  Given that the relevant language of § 17.1-223 is the later enactment, the court is inclined to treat it as controlling, at least with respect to whether a recorded instrument provides constructive notice to a bona fide purchaser.  For that reason, the court holds that the recorded deed of trust, although defectively acknowledged, would nevertheless constitute constructive notice sufficient to bind a lien creditor or a bona fide purchaser of real property, thereby defeating the trustee's avoidance claim.

C.

But even if the court's analysis is incorrect, and the curative provisions of the Code of Virginia did not apply because the deed of trust had not been recorded for three years at the time the bankruptcy petition was filed, the trustee would still have been charged with constructive knowledge that the debtors' interest in the property was subject to the deed of trust.  In Virginia, to obtain the status of a bona fide purchaser, a buyer must search the chain of title, as required by

                    Document      Page 15 of 18

the recording statutes, and exercise a degree of care when examining the records to ensure that the grantor has good title and that the property is free of encumbrances. *See, Roanoke Brick & Lime Co. v. Simmons*, 2 Va.Dec. 70, 20 S.E. 955, 956 (1895) ("The purchaser . . . must look to the title papers under which he buys, and is charged with notice of all the facts appearing upon their face, *or to the knowledge of which anything there appearing will conduct him*. He has no right to shut his eyes or his ears to information, and then say he is a bona fide purchaser without notice.") (emphasis added). "The great weight of authority is to the effect that the recordation of an instrument gives constructive notice of *all the facts expressly stated in the instrument and other matters therein suggested which might be disclosed upon prudent inquiry*." *Chavis v. Gibbs*, 198 Va. 379, 382, 94 S.E.2d 195, 197 (1956) (emphasis added). Here, a search of the grantor index in the Clerk's Office of the Circuit Court of Fairfax County for adverse conveyances from the date the debtors acquired title to the condominium unit to the date of the bankruptcy filing would have revealed the deed of foreclosure, since it was indexed in the debtors' names. Examination of that instrument—which refers to the deed of trust and fully describes it by date of execution, date of recordation, and by deed book and page number—would not only have revealed to any potential purchaser that the debtors no longer had title to the property, but would also have alerted the purchaser to the deed of trust. Thus, the court concludes that a purchaser from the debtors on the date of the bankruptcy filing would have been charged with constructive knowledge of the deed of trust. The trustee's position can rise no higher. For that reason, the trustee, even as a hypothetical bona fide purchaser from the debtor or hypothetical judgment lien creditor, cannot claim title to the property superior to, or free and clear of, the deed of trust and subsequent deed of foreclosure.

D.

Given the ruling on the foregoing issues, the court need not reach the defendants' additional argument that a foreclosure sale (independent of whatever constructive notice might arise from the recording of the foreclosure deed) cuts off the trustee's strong arm avoidance powers. In a similar situation, this court has ruled that it does not. *Mayer v. United States (In re Reasonover)*, 236 B.R. 219 (Bankr. E.D. Va. 1999), *vacated and remanded*, 238 F.3d 414 (4th Cir. 2000) (unpublished table decision), *opinion on remand*, 2001 WL 1168181, 2001 Bankr. LEXIS 2109 (Bankr. E.D. Va., Apr. 16, 2001). The debtor in *Reasonover* was in the business, among others, of buying distressed houses, fixing them up, and then selling them for a profit. Some considerable time before filing bankruptcy, she had conveyed one such property to a corporation in which she had an interest, and the corporation then conveyed it to an individual who financed the purchase with a mortgage loan. For whatever reason, a deed from the debtor to the corporation was either not prepared, or, if prepared was not recorded, with the result that there was a break in the chain of title, a fact that was discovered only after the purchaser defaulted and the lender bid in the property at the foreclosure sale. The lender then brought a state court action to establish its title to the property. The debtor being by then in bankruptcy, the trustee obtained a stay of the state court proceeding, sold the property free and clear of liens, escrowed the sales proceeds, and brought an avoidance action in this court against the lender as well as the United States (which held a criminal restitution judgment against the debtor for fraud unrelated to the transaction in question) to establish the superiority of his interest in the property. This court held that the trustee's strong-arm powers as a hypothetical bona purchaser of real property trumped any equitable interest in favor of the lender, with the exception of a claim of

16

equitable subrogation with respect to one of the two deeds of trust that the lender's funds had paid off, since a release of that deed of trust had not yet been recorded on the date the bankruptcy petition was filed. Thus, the trustee's avoidance powers in that case were not defeated by the foreclosure sale. Of course, in that case a search of the grantor index in the debtor's name would not have revealed, or even led to, the deed of trust because there was a complete break in the chain of title, so a somewhat different situation is presented.

      A separate judgment will be entered consistent with this opinion.

Date: _____                _____
                                                      Stephen S. Mitchell
Alexandria, Virginia                       United States Bankruptcy Judge

Copies to:

Richard A. Golden, Esquire
Golden & Golden, P.C.
10627 Jones St., Suite 101B
Fairfax, VA 22030
Counsel for the plaintiff

Madeline A. Trainor, Esquire
Cyron & Miller, LLP
100 N. Pitt Street, Suite 200
Alexandria, VA 22314
Counsel for defendants U.S. Bank National Association and
Mortgage Electronic Registrations Systems, Inc.

Patrick J. McKenna, Esquire
Crown Center, Suite 600
580 East Main Street
Norfolk, VA 23510
Co-counsel for defendants U.S. Bank National Association and
Mortgage Electronic Registration Systems, Inc.

Christopher A. Jones, Esquire
Whiteford Taylor & Preston, LLP
3190 Fairview Park Drive
Suite 300
Falls Church, VA 22042
Counsel for defendant Ponds at Centreville Condominium Unit Owners Association

Richard D. Scott, Esquire
LeClair Ryan
1800 Wachovia Tower, Drawer 1200
Roanoke, VA 24006
Counsel for Specialized, Inc., of Virginia